IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY RAY LINCKS, | § | |
| | § | |
| Movant, | § | |
| | § | No. 3:20-cv-01603-B-BT |
| v. | § | No. 3:17-cr-00017-B (18) |
| | § | |
| UNITED STATES of AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Larry Ray Lincks, presently held in state prison, filed a *pro se* motion to vacate, set-aside, or correct his sentence under 28 U.S.C. § 2255. The District Court referred the resulting civil action to the United States magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should deny Lincks's § 2255 motion.

## Background

Lincks pleaded guilty to possession with intent to distribute a controlled substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On June 19, 2018, the District Court sentenced him to 188 months' imprisonment. He appealed to the Fifth Circuit Court of Appeals, but on February 12, 2019, the Court dismissed the appeal based on his appeal waiver. *See United States v. Lincks*, No. 18-10760 (5th Cir. Feb. 12, 2019)

(per curiam). On June 17, 2019, the Supreme Court denied Lincks's petition for writ of certiorari. *See Lincks v. United States*, 139 S. Ct. 2731 (2019).

Lincks then filed this § 2255 motion (CV ECF No. 2), which was received in the Clerk's Office on June 15, 2020.[1] In his motion, Lincks argues:

(1)  his attorney provided ineffective assistance of counsel when he:

    (a)  failed to file a motion to suppress and dismiss the evidence,

    (b)  failed to accurately calculate the federal sentencing guidelines,

    (c)  argued an inappropriate defense,

    (d)  had an "grandious perhaps even delusional belief in his own abilitys [sic],"

    (e)  advised him that he would receive a sentence of 63 to 78 months' imprisonment if he pleaded guilty,

    (f)  failed to look at discovery materials,

    (g)  failed to investigate and prepare for trial,

    (h)  failed to object to the prosecutor comparing him to Tanya Lynn Scroggins,

    (i)  failed to file a motion for post-offense rehabilitation efforts, and

    (j)  failed to object to the Court's statement that he had pending cases in the state court system;

(2)  his guilty plea was "unknowing and involuntary";

---

[1] For purposes of these Findings, Conclusions, and Recommendation, "CR ECF" refers to the criminal action, case number 3:17-cr-17-B (18), and "CV ECF" refers to this civil action, case number 3:20-cv-1603-B-BT.

(3)    there was a procedural error in the calculation of his base offense level;

(4)    the Court failed to consider the "mitigated role factors"; and

(5)    the Court erred by applying the importation enhancement.

In its response, the Government argues that Lincks's claim that his guilty plea was "unknowing and involuntary" is belied by the record. Resp. 9-10 (ECF No. 9.) The Government further argues the record demonstrates no ineffective assistance of counsel; Lincks's ineffective assistance of counsel claims are fatally conclusory; Lincks's attorney was not ineffective at the plea stage; and Lincks has not shown that his attorney was ineffective at sentencing. *Id.* 11-22. Last, the Government argues Lincks's claims challenging his sentence are waived, non-cognizable, and in any event, meritless. Lincks filed a reply. *Id.* 22-23. The § 2255 motion is now ripe for determination.

**Legal Standards and Analysis**

1.    Lincks's guilty plea was knowing and voluntary.

In his second claim, Lincks argues that his guilty plea was "unknowing and involuntary" because his attorney failed to explain the Presentence Report (PSR) to him. Mot. 7 (ECF No. 2).

For a guilty plea to be valid, it must be both knowing and voluntary. *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986); *see also United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) ("A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently.") (quotation marks and citation omitted)); *United States v. Lord*, 915 F.3d 1009, 1016 (5th Cir.

2019) ("Because a guilty plea involves the waiver of constitutional rights, it must be knowing, voluntary, and intelligent.") (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A knowing and voluntary guilty plea means that "a defendant must have full knowledge of what the plea connoted and of its consequences." *Lord*, 915 F.3d at 1016 (citing *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). A plea is knowingly made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998). A plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilty. *Lord,* 915 F.3d at 1016. The consequences of sentencing, as they relate to a guilty plea, mean that the defendant must be aware of the maximum prison term and fine for the offense he is charged. *United States v. Herrod*, 595 F. App'x 402, 412 (5th Cir. 2015) (citing *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)); *see also United States v. Scott*, 857 F.3d 241, 245 (5th Cir. 2017) ("If the defendant is aware of the potential maximum prison term and fine for the offense charged, but nevertheless pleads guilty, his plea is knowingly and intelligently entered."); *United States v. Rosales*, 281 F. App'x 424, 425 (5th Cir. 2008) (per curiam) ("[B]ecause [the defendant] was aware of his minimum and maximum potential sentences and understood the elements of the offense as

4

charged, he also has not established that his guilty plea was not knowing or voluntary.") (citing *United States v. Brown*, 328 F.3d 787, 789 (5th Cir. 2003)).

The record belies Lincks's assertion that his guilty plea was not knowing and voluntary. First, Lincks signed a written plea agreement which summarized his rights, stated the charge against him, and outlined the consequences of pleading guilty to that charge. (CR ECF No. 303.) Specifically, the plea agreement advised that, by pleading guilty, Lincks would waive his right to a trial and the other constitutional rights that are associated with a trial, and be adjudged guilty. (CR ECF No. 303 at 1-3.) The plea agreement also advised Lincks of the maximum penalties the Court could impose for conviction of the offense to which he was pleading guilty. (CR ECF No. 303 at 2). As part of the written plea agreement, Lincks represented that his plea "is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement." (CR ECF No. 303 5.) Also, at his rearraignment hearing, held on June 20, 2017, Lincks admitted under oath that (1) he understood the charge against him; (2) he understood the consequences of pleading guilty; and (3) his guilty plea was freely and voluntary made. (CR ECF No. 819 at 18, 20-21, 27, 30-31.) These formal declarations in open court carry a strong presumption of truth, which form a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). And "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *United States v. Fuller*, 769

F.2d 1095, 1099 (5th Cir. 1985)); *see also United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (noting that plea colloquies are considered "solemn declarations in open court which carry a strong presumption of verity") (quotation marks and citation omitted). Contrary to his assertion, the record demonstrates that Lincks's guilty plea was knowing and voluntary.

To the extent Lincks contends that his guilty plea was not knowing or voluntary because he received ineffective assistance of counsel, he must show that his counsel's advice to plead guilty fell below the range of competence required of an attorney in a criminal case. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that the two-pronged *Strickland* standard applies to challenges to cases involving a guilty plea based on ineffective assistance of counsel); *see also Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (same). Lincks also must show prejudice by establishing "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206. Lincks has not attempted to show—much less demonstrated—prejudice. Therefore, Lincks's second claim should be denied.

2.    Lincks did not receive ineffective assistance of counsel.

In his first claim, Lincks contends that his attorney provided ineffective assistance of counsel by: (a) failing to file a motion to suppress and dismiss the evidence, including Lincks's "uncounseled unvoluntary" statements following his arrest; (b) failing to accurately calculate the federal sentencing guidelines; (c) arguing an inappropriate defense; (d) having a "grandious perhaps even delusional

6

belief in his own abilitys [sic];" (e) advising Lincks that he would receive a sentence of 63 to 78 months' imprisonment if he pleaded guilty; (f) failing to look at discovery materials; (g) failing to investigate and prepare for trial; (h) failing to object to the prosecutor comparing Lincks to Tanya Lynn Scroggins, a defendant in an unrelated criminal action; (i) failing to file a motion for post-offense rehabilitation efforts; and (j) failing to object to the Court's statement that Lincks had pending cases in the state court system. Mot. 7, 9-10 (ECF No. 2).

To prevail on a claim of ineffective assistance of counsel, a movant must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial. *Strickland*, 466 U.S. at 687. In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if a movant proves his counsel's performance was deficient, he must still prove prejudice. To demonstrate prejudice, a movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing

'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

      a.    <u>Lincks's claims are fatally conclusory.</u>

      Lincks's ineffective assistance of counsel claims are vague and conclusory. Although *pro se* filings are liberally construed, this does not mean the court must develop the arguments on behalf of the litigant. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("[M]ere conclusory allegations on critical issues are insufficient to raise a constitutional issue.") (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (noting that where a habeas petitioner fails to brief an argument adequately, it is considered waived) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Each of Lincks's ineffective assistance of counsel claims are too brief and lack the necessary facts and details for this Court to properly address them. Because Lincks's ineffective assistance of counsel claims are legally insufficient, his first claim should be summarily denied.

      b.    <u>Lincks did not receive ineffective assistance of counsel at the plea stage</u>.

Lincks argues that his trial attorney provided ineffective assistance of counsel at the plea stage by failing to accurately advise him of the potential impact of his PSR and about his guideline range when advising him to accept the Government's plea offer. Mot. 7, 9 (ECF No. 2). Lincks's argument fails, however, because it is contradicted by the record, and he has not demonstrated prejudice.

The representations in Lincks's plea agreement and his admissions at his rearraignment hearing belie his claims that his plea was induced by his trial attorney's erroneous advice. For example, in Lincks's plea agreement, he agreed that "no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case" and, without regard to any prediction provided by counsel, "the actual sentence imposed . . . is solely in the discretion of the Court." (CR ECF No. 303 at 2-3.) He also admitted that his plea was freely and voluntary made and not the result of threats or extraneous promises. *Id.* 5. Lincks affirmed that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose." *Id.* Then, he averred that he "ha[d] concluded that it [was] in his best interest to enter th[e] plea agreement . . . rather than to proceed to trial." *Id.* 6.

At Lincks's rearraignment hearing, he admitted under oath that the sentencing guidelines are advisory and no one, including his attorney, could predict with certainty what sentence the District Court would ultimately impose.

(CR ECF No. 819 at 20-21.) He also admitted he understood that if he pleaded guilty, a probation officer would prepare a PSR to assist the District Court at sentencing. *Id.* 17. Lincks stated he understood that he might receive a sentence of 20 years' imprisonment and, if he ultimately received a sentence more severe than he expected, he would remain bound by his guilty plea. *Id.* 32-33; *see also* PSR ¶ 84 (Lincks's statutory maximum term of imprisonment was 20 years.). He affirmed no one had made any promise or assurance to him in return for his guilty plea. (CR ECF No. 819 at 31.) Last, Lincks admitted he was "fully satisfied" with his attorney's representation. *Id.* 27.

"[S]olemn declarations in open court carry a strong presumption of verity." *United States v. Waters*, ____ F. App'x ____, 2021 WL 1652049, at *1 (5th Cir. Apr. 27, 2021) (per curiam) (quoting *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) (internal quotation marks and citation omitted)); *see also Blackledge*, 431 U.S. at 74; *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (noting that a plea agreement is accorded evidentiary weight). Lincks's claim that his attorney failed to advise him about his guilty plea is not supported by independent and otherwise reliable evidence. Indeed, it is wholly contradicted by the record. Therefore, his claim must fail. *See Palmer*, 456 F.3d at 491.

In addition, Lincks's claim also fails because he has not even attempted to show prejudice. *See Strickland*, 466 U.S. at 687; *see also Hill*, 474 U.S. at 59 (a movant must show "that there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on

going to trial."). Lincks has made no such allegations of prejudice in his motion, and he has not otherwise demonstrated that but for his attorney's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59.

      c.    <u>Lincks did not receive ineffective assistance of counsel at sentencing</u>.

In his § 2255 motion, Lincks argues that his attorney provided ineffective assistance of counsel at sentencing by (1) failing to file a motion to suppress evidence "mainly" for his uncounseled and involuntary interview at the time of his arrest; (2) "arg[uing] an inappropriate defense" and "ma[de] such gruesome testimony" that the Court did not consider his minor-role argument; (3) not completely going over the case in its entirety; (4) failed to review discovery materials; (5) failing to investigate and prepare for trial; (6) failing to object to the Government comparing him to Scroggins because Scroggins "[was] not [in his] conspiracy"; (7) refusing to file a motion for post-offense rehabilitation efforts, despite the fact he requested it be filed; (8) "rambling on . . . about how the case was an Aryan Brotherhood case"; and (9) failing to object to the Court's statement that he had pending state charges. Mot. 9-10 (ECF No. 2). As discussed above, Lincks's ineffective assistance of counsel claims are too conclusory, and they are therefore legally insufficient. In addition, each of these ineffective assistance of counsel claims relating to sentencing fail under both prongs of the *Strickland* standard.

Lincks argues that his attorney should have moved to suppress his post-arrest interview, moved for a minor-role reduction, explained his efforts at rehabilitation, and addressed his criminal history. But Lincks's attorney did address each of these issues in the written objections to the PSR and at sentencing. In the PSR objections, Lincks's attorney argued that Lincks's admissions in his uncounseled, voluntary post-arrest interview should not be used to calculate his drug quantity. (CR ECF No. 761 at 1-2.) Also, in the PSR objections, his attorney argued that Lincks should receive a minor-role reduction under U.S.S.G. ¶ 3B1.2(b). (*Id.* 2-3.) At sentencing, Lincks's attorney continued to pursue his objections to the Government's use of Lincks's admissions as a basis to support the drug quantity calculation. (CR ECF No. 801 at 4-8.) Additionally, Lincks's attorney also pursued his argument in favor of Links being given a minor-role reduction, and he pointed out Lincks lacked a relationship with his co-defendants. (*Id.* 14-15.) At sentencing, Lincks's attorney argued in favor of a sentence of less than 188 months' imprisonment, and in support, he referred to letters submitted to the Court by Lincks's family members about his difficult childhood, which explained Lincks's respectful nature and efforts to stop using drugs, minimizing his involvement with the Aryan Brotherhood, and arguing that Lincks was a "very small-time drug dealer" who was "never going to be more than that." (*Id.* 16-21.) Moreover, to the extent Lincks argues that his attorney should have presented these arguments differently or not mentioned his ties to the Aryan Brotherhood, his attorney's decisions were a reasonable exercise of his professional judgment.

*See United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) ("We review counsel's conduct with great deference, 'strongly presuming that counsel has exercised reasonable professional judgment.'") (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986)). Lincks has not overcome the presumption that his attorney's conduct was within the "wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689; *see also Moore v. United States*, 2021 WL 1345469, at *3 (N.D. Tex. Apr. 12, 2021) (citing *Strickland*, 466 U.S. at 689).

Lincks also argues that his attorney failed to properly investigate his case, including properly reviewing certain discovery materials in preparation for trial. Mot. 10 (CV ECF No. 2). An attorney has a duty to investigate the charges and evidence against their client. *See Strickland*, 466 U.S. at 690-91. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)); *see also United States v. Bernard*, 762 F.3d 467, 477 (5th Cir. 2014) (citing *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011)). "[I]n a guilty plea scenario, a [movant] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *Armstead*, 37 F.3d at 206 (citing *Hill*, 474 U.S. at 52). Lincks's claim fails because he does not suggest what further investigation would have revealed. *See Green*, 882 F.2d at 1003. Even if Lincks had demonstrated deficient performance, his claim still fails because he has not shown that his sentence would

13

have been less if his attorney had made different arguments or conducted a more thorough investigation. *See Glover v. United States*, 531 U.S. 198, 200 (2001) ("[I]f an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"); *United States v. Seyfert*, 67 F.3d 544, 548-49 (5th Cir. 1995) ("To satisfy the prejudice prong of the *Strickland* test in the context of a non-capital sentencing proceeding, a defendant must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh.") (citing *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995); *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)); *see also Potts v. United States*, 566 F.Supp.2d 525, 537 (N.D. Tex. 2008). Each of these arguments or objections would have failed on the merits.[2] Consequently, Lincks's ineffective assistance of counsel claims arising from sentencing lack merit.

        i.    *Lincks's drug quantity admissions*

Lincks argues that his attorney provided ineffective assistance of counsel by failing to file a motion to suppress his "uncounseled[,] involuntary interview at the time of arrest" on the basis that his admissions were unreliable. Mot. 7-9 (ECF No. 2). He contends that if his admissions had been excluded, he only would have been held responsible for only 113.4 grams of methamphetamine attributed to him by codefendant John Craig Owen, and his guideline range would have been lower. *Id.*

---

[2] The Court need not address *Strickland's* prejudice prong as it relates to Lincks's arguments that his attorney failed to "go over the case in its entirety," review discovery materials, and investigate and prepare for trial. These claims are so conclusory that such an analysis would be essentially impossible.

Lincks's argument fails, however, because the use of his admissions in the drug-quantity calculation is consistent with Fifth Circuit precedent.

"Ordinarily, a district court can consider illegally obtained evidence at sentencing even if that evidence is not admissible at trial[.]" *United States v. Skilling*, 554 F.3d 529, 592 (5th Cir. 2009) (citing *United States v. Robins*, 978 F.2d 881, 891 (5th Cir. 1992)), *overruled on other grounds by Skilling v. United States*, 561 U.S. 358 (2010). Similarly, "[i]n determining the total drug quantity attributable to a defendant as relevant conduct, '[t]he court may extrapolate . . . from any information that has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Barfield*, 941 F.3d 757, 762 (5th Cir. 2019) (quoting *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006)). "[W]here a defendant does not introduce evidence to rebut his post-arrest admission of relevant conduct, the district court may consider it at sentencing." *Id.* at 764. This is so even if the defendant argues that his statements to law enforcement were inherently unreliable because they were "self-serving" and made under the influence of drugs. *Id.*

The Court properly relied on the PSR to resolve the factual dispute over the proper drug quantity, as opposed to relying on Lincks's version of the facts presented at sentencing. After the September 1, 2016 traffic stop by the Texas Department of Public Safety (DPS), special agents discovered 16 grams of methamphetamine. (PSR ¶ 12.) During a voluntary, post-arrest interview, Lincks admitted to obtaining methamphetamine from his codefendant, Owen, on

15

approximately five occasions. (*Id.* ¶ 13.) Lincks also admitted he knew Owen and he obtained 0.5 ounces to two ounces at a time, and on one occasion, Owen supplied him with four ounces of methamphetamine. (*Id.*) Lincks told agents that Owen had an unindicted coconspirator deliver methamphetamine to him on three to four occasions. (*Id.*) Lincks's statements were consistent with what Owen told investigators, which was that he typically delivered up to three ounces of methamphetamine each time he sold to Lincks; however, on one occasion, he provided Lincks with 0.25 of a pound of methamphetamine. (*Id.* ¶ 11.) Lincks also told investigators that he received methamphetamine from "Pete" on five to six occasions, and he received one to two ounces at a time. (*Id.* ¶ 13.) Lincks stated that "Tony" provided him with the most methamphetamine, up to 0.5 pound. (*Id.*) During Lincks's post-arrest interview, his cell phone rang, and he informed the agents the caller, Darla Scroggins, an unindicted coconspirator, purchased 3.5 grams (or an "eight ball") of methamphetamine from him. (*Id.*)

The probation officer determined that Lincks's admissions were reliable, and she included them in her drug-quantity calculation of 597.18 grams of methamphetamine, which represents the total of quantity Lincks admitted to possessing plus the quantity seized on September 1, 2016 (*Id.* ¶ 17.) She further explained that the calculation was "conservative based on the length of time [Lincks] was involved in the conspiracy and the number of methamphetamine customers he was distributing to[.]" (*Id.*) Lincks's offense involved at least 500

grams but less than 1.5 kilograms of methamphetamine, so the probation officer applied a base offense level of 30. (*Id.* ¶ 23 (citing U.S.S.G. ¶ 2D1.1(c)(5)).

The Government argues, "[i]t was only when Lincks realized the impact of his post-arrest admissions on the PSR's calculation of his base offense level that he attempted to cast them [aside] as unreliable." At sentencing, held on June 19, 2018, Lincks's attorney noted that Lincks's guideline range was increased due to his admissions to the DPS special agents. (CR ECF No. 801 at 5.) Specifically, Lincks's attorney argued that the statement Lincks gave to DPS agents was only "partially substantiated" by codefendant Owen, who is the only person who knew the entire conspiracy. (*Id.*) Lincks's attorney further argued that as for the rest of what Lincks said, it "was not substantiated." (*Id.*) However, these arguments fail because Lincks does not come forward with any evidence to support his claim that his post-arrest admissions were unreliable. *See Barfield*, 941 F.3d at 766-67 ("Given the illogic of Barfield's explanation for overstating his drug-trafficking activity, the lack of evidence that he was intoxicated or dishonest during his interview, and the weight of both precedential and persuasive authority, we conclude that the district court did not clearly err in holding Barfield accountable for the full quantity of methamphetamine he admitted to distributing.").

    ii. *Minor-role reduction*

Lincks argues that his attorney's arguments at sentencing discouraged the Court from considering his argument that he had a minor role under U.S.S.G. § 3B1.2. Mot. 9 (ECF No. 2). Lincks further argues that the Court erred by failing to

consider "the factors in comment 3(c) to USSG § 3B1.2." *Id.* 12. Last, Lincks contends that his attorney should have objected when the Government compared him to Tanya Lynn Scroggins. *Id.* 10.

A defendant is entitled to a mitigating-role reduction under U.S.S.G. § 3B1.2 when he shows by a preponderance of the evidence: (1) the culpability of the average participant in the criminal activity, and (2) he was substantially less culpable than the average participant. *United States v. Palacios-Villalon*, 802 F. App'x 868, 869 (5th Cir. 2020) (per curiam) (citing *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016) (footnote omitted)); *see also Arellano-Galeana v. United States*, 2020 WL 5819362, at *3 (N.D. Tex. Sept. 30, 2020). A court's determination regarding whether a minor-participant reduction is appropriate is based "on the totality of the circumstances." *United States v. Kearby*, 943 F.3d 969, 977 (5th Cir. 2019) (citing U.S.S.G. § 3B1.2 cmt. n.3(C)). The decision whether to apply a mitigating-role reduction is a factual finding that is reviewed for clear error. *Palacios-Villalon*, 802 F. App'x at 869 (citing *Untied States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016) (citation omitted)).

The PSR, which the District Court adopted, stated that "the defendant is not subject to a mitigating role reduction." (PSR ¶ 25.) Lincks does not argue or attempt to demonstrate the culpability of the average participant in the criminal activity. Moreover, even if Lincks had made such a showing, he would not necessarily be entitled to a mitigating-role reduction. *See Castro*, 843 F.3d at 612 ("Amendment 794 does not provide an affirmative right to a § 3B1.2 reduction to

every actor *but* the criminal mastermind.") (quoting *Gomez-Valle*, 828 F.3d at 331) (emphasis in original)). The Fifth Circuit "has repeatedly explained that '[i]t is improper for a court to award a [§ 3B1.2] adjustment simply because a defendant does less than the other participants[:] . . . the defendant must do enough less so that [s]he at best was peripheral to the advancement of the illicit activity.'" *Id.* at 613-14 (alterations in original) (quoting *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991)). Lincks has failed to show that his involvement in the drug conspiracy was merely peripheral in nature. Rather, the record reflects that he was a mid-level drug dealer who received methamphetamine through multiple transactions from his codefendant, Owen, who was near the top of the conspiracy, and Lincks, in turn, supplied others who did not get the benefit of a minor-role reduction. (CR ECF No. 801 at 14-15, 24; PSR ¶¶ 11, 13.)

The District Court adopted the PSR and held Lincks responsible for a total of 581.18 grams of methamphetamine, and pursuant to U.S.S.G. § 2D1.1(c)(5), the District Court assigned a base offense level of 30. (PSR ¶¶ 13, 23.) The drug-quantity calculation and base offense level adopted by the District Court accurately reflected Lincks's role in the conspiracy by holding him responsible only for the methamphetamine he purchased and possessed for distribution. (PSR ¶ 17; CR ECF No. 801 at 11.) The District Court could have held Lincks responsible for all the relevant conduct falling under U.S.S.G. § 1B1.3(a)(1)(B) (encompassing "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii)

reasonably foreseeable in connection with that criminal activity; that occurred during the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense"), but it did not. Rather, the District Court's drug-quantity calculation reflected only Lincks's specific role in the drug conspiracy.

Lincks's argument that the District Court did not consider each of the U.S.S.G. § 3B1.2 commentary factors also lacks merit. "[T]he [C]ourt need not discuss each [§ 3B1.2 commentary] factor on the record," and the Court's ruling was reasonable considering the record. *See United States v. Morrison*, 699 F. App'x 387, 388 (5th Cir. 2017) (citing *United States v. Torres-Hernandez*, 843 F.3d 203, 209-10 (5th Cir. 2016)); *see also Kearby*, 943 F.3d at 978 ("The court need not 'expressly weigh each factor in § 3B1.2 on the record.'") (quoting *Torres-Hernandez*, 843 F.3d at 209).

In sum, Lincks fails to show prejudice because he has not demonstrated that if his attorney made a different argument at sentencing, he would have received a minor-role reduction. The District Court denied a minor-role reduction and imposed a guideline sentence of 188 months' imprisonment—a sentence the District Court felt was necessary and appropriate for "deterrence and safety of the community and promoting respect for the law." (CR ECF No. 801 at 26.) *See United States v. Garcia-Miranda*, 780 F. App'x 127, 131 (5th Cir. 2019) (per curiam) (affirming the district court's determination that the defendant was not entitled to a § U.S.S.G. § 3B1.2 reduction "[i]n light of [the defendant's] failure of proof, and

despite the [court's] absence of findings of what constituted the average, we see no basis for reversal.").

### iii.    *Rehabilitation efforts*

Lincks argues that his attorney "refused to file a motion for post-offence [sic] rehabilitation efforts," even though Lincks asked him to do so. Mot. 10 (ECF No. 2).

At sentencing, Lincks's attorney argued that Lincks was more mentally competent after "[t]he dope [was] finally out of his system." (CR ECF No. 801 at 13.) During allocution Lincks stated he had "been clean since September [1], 2016" and had been "doing Bible studies" and "talked to education people about continuing [his] . . . work-related education." (*Id.* at 7, 21-22.) After the District Court considered Lincks's efforts at rehabilitation, it sentenced him to 188 months' imprisonment, which fell at the bottom of his guidelines range.[3] (*Id.* 26.)

This argument fails because Lincks has not identified specifically what motion his attorney should have filed. Also, Lincks has not shown that the District Court's sentence would have been less if his attorney had argued his post-rehabilitation efforts differently. *See Glover*, 531 U.S. at 200 ("[I]f an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"); *Seyfert*, 67 F.3d at 548-49 ("To satisfy the prejudice prong of the *Strickland* test in the context of a non-capital sentencing proceeding, a

---

[3] As set forth in the PSR adopted by the District Court, Lincks's guideline imprisonment range was 188 months to 235 months. (PSR ¶ 85.)

defendant must establish a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh.") (citing *Acklen*, 47 F.3d at 742; *Segler*, 37 F.3d at 1136); *see also Potts*, 566 F.Supp.2d at 537.

### iv.    *Aryan Brotherhood affiliation*

Lincks also argues that his attorney "rambled on in court about how the case was an Aryan Brotherhood case." Mot. 10 (CV ECF No. 2).

At sentencing, Lincks's attorney informed the Court that Lincks's ties to the Aryan Brotherhood arose solely from his time in state prison. (CR ECF No. 801 at 19.) The prosecutor informed the District Court that "[t]his was not an Aryan Brotherhood case." *Id.* 22. Even if Lincks's attorney had not made the argument regarding his ties to the Aryan Brotherhood, in his § 2255 motion, Lincks does not deny his affiliation with the Aryan Brotherhood. In fact, Lincks "informed law enforcement officers he was in the Aryan Brotherhood prison gang while in the [Texas Department of Criminal Justice (TDCJ)]" but that "he held no rank and no longer communicates with other members." (PSR ¶ 49.)

Despite the information before the District Court, it sentenced Lincks without any specific reference to his affiliation with the Aryan Brotherhood. Rather, the District Court referred to Lincks's criminal history and the factors under 18 U.S.C. § 3553(a). (CR ECF No. 801 at 26.) Accordingly, Lincks has not shown that the outcome would have been different but for his attorney's remarks. *See Glover*, 531 U.S. at 200 (to show prejudice under *Strickland*, a defendant must

22

establish that but for counsel's deficient performance, his sentence would have been significantly less)*; Seyfert*, 67 F.3d at 548-49 (same).

          v.    *Pending state charges*

Lincks argues that his attorney should have objected to the Court's statement that he had a pending state case, and Lincks represents that this case had been "taken care of on Sept 29-[20]16," which is evidenced by the fact that he was transferred to TDCJ on a bench warrant. Mot. 10 (ECF No. 2).

It is not clear what statement Lincks is referencing. Presumably, he means the District Court's statement that Lincks's federal sentence would run consecutive to his state sentence in Case Number 30,101, which was pending in the 354th Judicial District Court of Hunt County at the time of his sentencing on June 19, 2018. (CR ECF No. 801 at 26-27; CR ECF No. 771 at 2.) A jury did not hear the District Court's statement, and even if Lincks's attorney had objected to this statement at sentencing, it is not clear what this would have accomplished. Lincks has failed to demonstrate prejudice, and this claim fails under *Strickland*.

3.    <u>Lincks waived his challenges to his sentence, and to the extent they are not waived, his challenges are non-cognizable and meritless.</u>

Lincks's ineffective assistance of counsel claim also constitute direct attacks on his sentence. He argues that the District Court erred when it determined his drug quantity calculation, when it determined his base-offense level, and when it denied him a minor-role reduction. Mot. 7-8, 12 (CV ECF No. 2). Lincks also argues that the District Court erred by applying the importation enhancement under

U.S.S.G. § 2D1.1(b)(5). *Id.* But Lincks waived these challenges to his sentence via the appeal waiver in his plea agreement.

Generally, a collateral review waiver provision is enforced where the waiver "was knowing and voluntary, and if the waiver applies to the circumstances at hand." *United States v. Walters*, 732 F.3d 489, 491 (5th Cir. 2013) (citing *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005))*; see also United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (citing *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir. 1992)). However, the Fifth Circuit Court of Appeals has recognized exceptions to this general enforcement rule where a movant raises a claim of ineffective assistance of counsel or the sentence exceeds the statutory maximum. *United States v. Barnes*, 953 F.3d 383, 388-89 (5th Cir. 2020); *see also United States v. Hollins*, 97 F. App'x 477, 479 (5th Cir. 2004). Lincks's challenges to the merits of his sentence are waived by the appeal waiver in his plea agreement. (CR ECF No. 303 at 5.) In his appeal waiver, Lincks waived the right to bring a § 2255 motion, except under limited circumstances, which are not applicable here. *Id.*

Lincks's challenges to his sentence also are not cognizable on collateral review. "Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (internal citation omitted) (citing *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994);

*United States v. Faubion*, 19 F.3d 226, 233 (5th Cir. 1994)); *see also Qualls v. United States*, 2021 WL 1237119, at *3 (N.D. Tex. Apr. 2, 2021) (citing *Williamson*, 183 F.3d at 462).

Lincks argues that the Court erred in applying the importation enhancement under § 2D1.1(b)(5) because the Government failed to prove that he was personally involved in the importation of methamphetamine or knew the drugs were imported. Mot. 13 (ECF No. 2). However, this argument is foreclosed by Fifth Circuit precedent. *See Kearby*, 943 F.3d at 976 ("distribution (or possession with intent to distribute) of imported [meth], even without more, may subject a defendant to the [importation enhancement under] § 2D1.1(b)(5) [ ].") (quoting *United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014) (per curiam)). Likewise, "it's irrelevant whether [the defendant] knew the drugs had come from Mexico; and, by the same logic, the importation needn't have happened during the 'window' of [the defendant's] involvement in the conspiracy." *Id.* Lincks does not argue in his § 2255 motion that the methamphetamine was not imported. According to the PSR, which the District Court adopted, one of Lincks's codefendants, Robert Trevizo Munoz, was receiving shipments of methamphetamine from a source in Mexico and providing it to distributors, including Owen, who then supplied it to Lincks. (PSR ¶ 14.) Therefore, the District Court properly applied the importation enhancement in this case.

Finally, even if Lincks's claims regarding drug quantity and base offense level calculations and the denial of a minor-role reduction survived his appeal

waiver and were somehow cognizable in this § 2255 action, they fail on the merits, as fully addressed above.

III.

For the foregoing reasons, the Court should DENY the motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255.

Signed June 8, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).